DONLAN, APPELLANT, *v.* ARNOLD ET AL., RESPONDENTS.

(No. 3,329.)

(Submitted January 7, 1914. Decided January 22, 1914.)

[138 Pac. 775.]

*Logs and Logging—Contracts—Extension—Offer and Accept-ance—Evidence—Forfeitures—Relief—Prerequisites.*

Contracts—Extension—Offer and Acceptance—Evidence.
  1.   The contention that a contract, under the terms of which standing timber was to be removed within a certain time, had been extended by an oral agreement between the parties, was not sustained by evidence showing an offer on the part of the owner, kept open for nearly two months, and a counter-proposition by an agent of the purchaser to whom the latter had sent a check for the consideration demanded by the owner, together with instructions to close the deal, the agent breaking off negotiations without communicating the acceptance or tendering the consideration.

Same—Forfeiture—Relief from—Prerequisites.
  2.   *Held,* under the rule that before a party may have the protection afforded by section 6039, Revised Codes, against loss in the nature of a forfeiture of payments made under a contract which he has failed to fully perform, he must show by his pleading and proof that his breach of duty was not, among other things, grossly negligent, that plaintiff who, after purchasing standing timber with the understanding that it should be removed before a certain date five years thereafter, did nothing in the premises until sixty days before the expiration of the time limit, when he entered into negotiations for an extension of the life of the contract, and then delayed taking action until a few days before the end of the five-year period when his agent, though instructed to close the transaction by accepting an offer made by the owner, broke off negotiations and failed to communicate the acceptance or tender the consideration asked, was not entitled to relief.

    [As to relief in equity from forfeitures, see notes in 68 Am. Dec. 85; 86 Am. St. Rep. 48.]

*Appeal from District Court, Sanders County; R. Lee Mc-Culloch, Judge.*

ACTION by Edward Donlan against Lewis Arnold and wife. Judgment for defendants, and plaintiff appeals. Affirmed.

*Messrs. Harry H. Parsons, A. N. Whitlock,* and *James M. Self,* for Appellant, submitted a brief.

Appellant contends that there was an oral contract entered into between the parties to this action, whereby the defendants,

in consideration of plaintiff's promise to pay $500, agreed to extend the time within which the plaintiff could remove his timber for one year. Acceptance of an offer counts from the time of its mailing, and the fact that the check in this instance was mailed to a third party rather than to Arnold makes no difference, especially since Arnold himself could not be located. The check was put completely out of plaintiff's power. There was certainly as good an acceptance here as would have been the case had the check been mailed to Arnold and because of miscarriage in the mails had not reached him until after July 17th. In the latter case it is universally held that the acceptance is complete upon mailing. (*Canterbury* v. *Sparta,* 91 Wis. 53, 51 Am. St. Rep. 870, 30 L. R. A. 845, 64 N. W. 311; *Patrick* v. *Bowman,* 149 U. S. 411, 37 L. Ed. 790, 13 Sup. Ct. Rep. 811; *Watson* v. *Russell,* 149 N. Y. 388, 44 N. E. 161; *Chytraus* v. *Smith,* 141 Ill. 231, 30 N. E. 450.) The same holding is found in the telegraph cases. (*Andrews* v. *Schreiber,* 93 Fed. 367.) The failure of Mr. Burleigh to tender the check to Arnold is not fatal, for Arnold at that time made it clear that a tender would be unavailing and under those circumstances a tender is unnecessary. (*Creek Land etc. Co.* v. *Davis,* 28 Okl. 579, 115 Pac. 468; *Ansley* v. *Hightower,* 120 Ga. 719, 48 S. E. 197; *Martin* v. *Bank,* 131 N. C. 121, 42 S. E. 558; *Ashley* v. *Rocky Mt. Bell Tel. Co.,* 25 Mont. 286, 64 Pac. 765; *Austin* v. *St. Louis Transit Co.,* 115 Mo. App. 146, 91 S. W. 450.)

If there was an oral contract between the parties to extend the time for removing the timber, two objections might arise: (1) That since this latter contract was oral, it could not be used to vary the original written conveyance, because of the parol evidence rule; and (2) that such contract would be required to be in writing under the statute of frauds. In the absence of statute, there is nothing to prevent a subsequent oral agreement supplanting, releasing or revoking the prior written one, so far as the parol evidence rule is concerned, but here we do not have to go so far as that for the subsequent agreement does not even vary the terms on the original instrument. More-

over, the establishment of such an oral agreement and the failure to comply therewith would amount to fraud on the part of the defendants, the showing of which cannot be objected to. (*Harris* v. *Murphy,* 119 N. C. 34, 56 Am. St. Rep. 656, 25 S. E. 708; *Guidery* v. *Green,* 95 Cal. 630, 30 Pac. 786; *King* v. *Seebeck,* 20 Idaho, 223, 118 Pac. 292; *Schweikert* v. *Seavey,* 6 Cal. Unrep. 554, 62 Pac. 600.)

It is true that the contract or instrument of conveyance of the timber in question was required to be written, but that does not mean that a contract extending the time of removal must be in writing. The oral agreement, if any such existed, did not purport to convey land and in fact had to do with real estate only to the extent that it fixed the time of removal of timber after severance. (*King* v. *Seebeck,* 20 Idaho, 223, 118 Pac. 292; *Harman* v. *Harman,* 70 Fed. 894, 17 C. C. A. 479; *Hines* v. *Wilcox,* 96 Tenn. 148, 54 Am. St. Rep. 823, 34 L. R. A. 824, 33 S. W. 914; *Rackemann* v. *Riverbank Imp. Co.,* 167 Mass. 1, 57 Am. St. Rep. 427, 44 N. E. 990.) The cases where there was an extension of time for redemption are quite analogous to the case at bar and their holdings are in accord with the principle above stated. (*Byers* v. *Locke,* 93 Cal. 493, 27 Am. St. Rep. 212, 29 Pac. 119; *Judd* v. *Mosely,* 30 Iowa, 423; *Kaler* v. *Grady,* 18 Ky. Law Rep. 678, 37 S. W. 955.)

A court of equity looks with disfavor upon all forfeitures and will never allow one to operate if it appears that it was brought about by any fault of the party desiring it; and even without his fault, it will not be allowed if any means can be found whereby the party claiming such forfeiture can be adequately compensated. This principle is well illustrated in a great variety of cases, notably the cases involving forfeiture of past payments, in cases where contracts to sell lands are not carried out, and in foreclosure cases. In fact, this doctrine in the law is much older than the doctrine with reference to the removal of timber within a specified time. (See *Cue* v. *Johnson,* 73 Kan. 558, 85 Pac. 598; *Seymour* v. *Oelrichs,* 156 Cal. 782, 134 Am. St. Rep. 154, 106 Pac. 88; *Cheney* v. *Bilby,* 74 Fed. 52, 20

C. C. A. 291; *Donnelly* v. *Eastes,* 94 Wis. 390, 69 N. W. 157;
*Prondzinski* v. *Garbutt,* 8 N. D. 191, 77 N. W. 1012; *Holman* v.
*Omaha etc. Bridge Co.,* 117 Iowa, 268, 94 Am. St. Rep. 293,
62 L. R. A. 395, 90 N. W. 833; *Fields* v. *Killion,* 129 Ala. 373,
29 South. 797; *Wheeling etc. R. Co.* v. *Triadelphia,* 58 W. Va. 487,
4 L. R. A. (n. s.) 321, 52 S. E. 499; *Toledo etc. R. Co.* v. *St.
Louis etc. R. Co.,* 208 Ill. 623, 70 N. E. 715; *Waldron* v. *Toledo etc.
Ry. Co.,* 55 Mich. 420, 21 N. W. 870; *Schroeder* v. *Young,* 161
U. S. 334, 40 L. Ed. 721, 16 Sup. Ct. Rep. 512; *Wallace* v. *Dodd,*
136 Cal. 210, 68 Pac. 693; *Kampman* v. *Kampman,* 98 Ark. 328,
135 S. W. 905.)

*Messrs. Tolan & Gaines,* for Respondents, submitted a brief;
*Mr. R. F. Gaines* argued the cause orally.

MR. JUSTICE SANNER delivered the opinion of the court.

On July 17, 1905, the parties to this suit entered into a con-
tract wherein the respondents, for a valuable consideration,
sold to the appellant all the timber growing upon a certain
tract of land situated in Missoula county, upon the condition
that the timber be cut and removed on or before July 17, 1910.
In the fore part of May, 1910, the appellant, having done noth-
ing toward cutting or removing the timber, and realizing that
the contract would soon expire, requested one Fairbanks to see
Mr. Arnold and ascertain from him upon what terms an exten-
sion for one year could be procured. Fairbanks saw Arnold,
who said he would grant such extension for $500, adding that
he was anxious to have the land cleared up, that he would
rather have the timber taken off than to have the money, and
that "to run over a month or two over the present year there
would be no extra charge." Fairbanks wrote at once to the
appellant, advising him to see Arnold. Between June 4th and
8th, appellant went to Plains to see Arnold, but failed to do so,
learning that Arnold was at St. Regis. Upon June 27th the
appellant sent his bookkeeper, Mr. Keith, to Plains to get Mr.
Burleigh to go to Arnold and get an extension. Keith went to

Plains and saw Mr. Burleigh, but nothing was done because Arnold was out of town. A few days later Mr. Burleigh saw Arnold and talked with him. Touching this conversation, Mr. Burleigh testifies: "He (Arnold) never denied that he had agreed to grant an extension for a year on the basis of $500, but complained and said that he had of course expected that he would see Mr. Donlan, that Mr. Donlan had not showed up or anybody else had not showed up. * * * I asked Mr. Arnold what he would take if the timber could be cut off sooner than a year. He seemed to be anxious to have the timber cut off, and there was no satisfactory understanding arrived at. I think Mr. Arnold told me he would consider the matter." In the last of June or first part of July appellant himself went to Plains to see Arnold, but Arnold was at Camas Springs. On July 12th Keith sent a check for $500 to Mr. Burleigh, and within a day or two appellant himself went to Paradise to see Mr. Burleigh and have him close up the deal, which he promised to do if Arnold was at home. Mr. Burleigh saw Arnold on the 13th or 14th and spoke to him about the matter of terms for a shorter extension, and Arnold "said he had come to a conclusion about it, and that the only conditions upon which he would allow Mr. Donlan to cut that timber was * * * a stumpage basis at the same rate as paid to the state." Whereupon Mr. Burleigh, deeming it useless to tender the check, simply kept it and quit the negotiations without making any tender. At no time after the interview between Fairbanks and Arnold was any tender made to Arnold or anything written to him; nor was anything said to him indicative of an acceptance of his terms, save as above set forth.

The foregoing facts, constituting the substance of all the evidence in the case, were presented under an amended complaint which declared upon two causes of action, *viz.:* (a) To quiet appellant's title as owner of the timber; and (b) to compel respondents to "execute a sufficient grant" to the appellant of the right to enter the premises and cut and remove the timber. Issue was joined by the answer, which denied the essential allega-

tions of the amended complaint, which affirmatively asserted title to any right of possession of the timber in the respondents, which alleged the expiration of the original agreement, and which assailed the validity of the alleged extension upon various legal grounds connected with the oral character of the same. In the reply it is pleaded that the failure to have the extension reduced to writing was due wholly to the acts of respondents, and that the respondents are by their acts estopped to claim the timber or to question the right of the appellant to enter the lands in question and remove the timber therefrom. At the close of plaintiff's evidence, there was an order of nonsuit, upon which a judgment was thereafter given and entered, denying relief to the appellant and granting the prayer of respondents' answer. From that judgment this appeal is taken.

The appellant, conceding that under the decision of this court in *Hollensteiner* v. *Missoula Lumber Co.*, 37 Mont. 278, 96 Pac. 420, no right remained in him to cut the timber left when the contract of July 17, 1905, expired, makes the following contentions: (1) That the evidence discloses an enforceable oral contract between the parties for a year's extension; and (2) assuming that no such contract was made, the rule of *Hollensteiner* v. *Lumber Co.* works a forfeiture which should not be enforced in this case, in view of the equities disclosed by the record. Of these in their order.

1. It is impossible to extract anything more from the conduct [1] of Arnold than a mere offer to extend for a year for a certain consideration. Instead of accepting this offer, the appellant, through the agent chosen by him, asked terms for a shorter extension. No pretense is made that the appellant ever accepted Arnold's offer until the check was sent to Burleigh, on July 12th, and instructions were given him by the appellant on July 13th to close the transaction. This assumed acceptance was purely subjective and of no effect, because the agent chosen by the appellant did not communicate the acceptance nor tender the consideration. On the contrary, he inquired concerning the terms for a shorter extension, and, being met by a flat refusal to

grant any extension, departed without further ado. If we imagine the respondents seeking to recover from the appellant the price of this alleged extension, some notion may be gained of the utter infirmity of the claim that a contract was entered into therefor. A contract is not created by a mere offer, even though kept open for nearly two months, which is revoked before acceptance. The principles involved are too fundamental and too elementary for discussion. (Rev. Codes, sec. 4992; *Brophy v. Idaho P. & P. Co.,* 31 Mont. 279, 78 Pac. 493; *State ex rel. Henderson* v. *Board of State Prison Commrs.,* 37 Mont. 378, 96 Pac. 736; *Monahan* v. *Allen,* 47 Mont. 75, 130 Pac. 768.)

2. Assuming that the application to this case of the rule of *Hollensteiner* v. *Lumber Co.* involves a loss in the nature of a [2] forfeiture, the views of this court, as recently expressed upon this subject, become pertinent. In *Clifton* v. *Willson,* 47 Mont. 305, 132 Pac. 424, attention was called to the rule at common law which denied recovery for payments made or acts done by one who has stopped short of full performance of his contract, and to the circumstance that whenever relief was attainable. it became so by virtue of the rule of equity against forfeitures; that the rule against forfeitures, so far as this state is concerned, is expressed in section 6039 of our Codes, and a party seeking its benefit must by his pleading and proof bring himself within it. It is not enough to say on appeal that a loss in the nature of a forfeiture may be incurred by enforcing the terms of a contract which the parties themselves have made; but, to secure the protection of section 6039, it must be invoked, and "the very minimum requirement is that the party invoking the protection afforded by that section must set forth facts which will appeal to the conscience of a court of equity." (*Fratt* v. *Daniels-Jones Co.,* 47 Mont. 487, 133 Pac. 700.) A concrete application of these rules illustrating some circumstances authorizing relief from a loss in the nature of a forfeiture is furnished by the case of *Cook-Reynolds Co.* v. *Chipman,* 47 Mont. 289, 133 Pac. 694. The effect of all these cases is that relief from forfeiture cannot be

awarded to one who fails to show that his breach of duty was not grossly negligent, willful, or fraudulent.

The respondents vigorously and with some reason contest the sufficiency of the pleadings as a basis for relief from for- feiture. But, passing that, we are without warrant for such relief in the facts established on the trial. The appellant, hold- ing a five-year contract, the expiration of which he must have known would leave him without any right, waited four years and ten months before taking any action, either toward remov- ing the timber or toward securing an extension. About sixty days before the end, he authorized an agent to negotiate for terms of an extension. At that time he could have removed the timber by going to some extra expense. The agent sent to negotiate for terms of extension secured an offer which he communicated to the appellant without delay, and the appellant could by a prompt acceptance of the offer have settled the mat- ter beyond question. Presumed to know that the law afforded the privilege to Arnold to revoke his offer at any time before notice of acceptance, the appellant nevertheless delayed even his subjective acceptance until within a few days of the end of the contract, and then through his agent failed to communicate that acceptance before the offer was revoked. In explanation it is suggested that Arnold's statements that he would rather have the timber taken off than have the money, and that "to run over a month or two over the present year there would be no extra charge," lulled the appellant into a false security. Whether these statements, if communicated to the appellant, would have justified his course we do not determine, because the appellant does not prove that he ever heard of them or that they ever misled or influenced him in any way. The only rational inference is to the contrary. It is true that he says, "I relied absolutely on anything Mr. Arnold said to Mr. Fairbanks and anything Mr. Fairbanks would say to me"; but he could not rely on anything said to Fairbanks unless Fairbanks commu- nicated it to him, and the only communication from Fairbanks to him was the letter sent immediately after Fairbanks had talked

with Arnold. This letter "was to the effect that he went down and seen Mr. Arnold and Mr. Arnold would give an extension for one year for $500 and for me to see Mr. Arnold." The endeavors of appellant, in person and through Mr. Burleigh, evince to our minds, not reliance upon the statements now urged as an estoppel, but a desire to secure other terms than those offered, as well as an appreciation of the necessity to get into written form whatever might be ultimately agreed upon. When all is said for appellant that can be said, still the record does not make any adequate excuse for his failure to protect his interests under the contract, nor disclose wherein the conscience will be shocked by permitting the matter to rest where his neglect has placed it. (*Fratt* v. *Daniels-Jones Co., supra.*)

The order of nonsuit was correct, and the judgment founded thereon is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.