FIRST NATIONAL BANK OF RAYMOND, RESPONDENT, *v.*
ROBKE ET AL., APPELLANTS.

(No. 5,624.)

(Submitted February 19, 1925.   Decided March 16, 1925.)

[235 Pac. 327.]

*Mortgages — Securing Future Advances — Oral Agreement —
Parol Evidence — Admissibility — Pleadings When Deemed
Amended—Appeal and Error—Equity Cases—Record—Evidence—Effect of Failure to Observe Supreme Court Rule.*

Appeal and Error—When Pleadings Deemed Amended to Meet Proof.
1. Where defendant by his cross-examination of plaintiff's witnesses brings out evidence which was inadmissible under the pleadings or sits by and permits plaintiff on redirect to present such evidence, thus assisting plaintiff in making out a case, the pleadings will be treated as amended to meet the proof.

Same — Mortgages — Securing Future Advances — Plaintiff's Pleadings Deemed Amended to Meet Proof, When.
2. *Held,* under the above rule, that where the pleadings in an action to foreclose a real estate mortgage were insufficient to admit proof that the mortgage, in addition to securing the amount therein mentioned, was intended to secure also future advances, the defendant elicited testimony which made out a case for plaintiff in that behalf, he was not in a position to urge on appeal that the evidence was insufficient to warrant a finding in favor of plaintiff.

Appeal and Error—Equity Cases—Preparation of Record—Effect of Failure of Appellant to Observe Rule as to Presentation of Evidence.
3. Failure of appellant in an equity case to observe Supreme Court Rule 7, subdivision 3, requiring the testimony to be presented by question and answer, compels that court to place a greater reliance upon the trial court's findings than would otherwise be the case in determining whether the evidence preponderates against the findings.

Mortgages—Securing Future Advances—Oral Agreement—Parol Evidence Admissible.

    4.  The parties to a real estate mortgage which on its face does not disclose any purpose to secure thereby any future advances to be made by the mortgagee may agree that it shall do so, and parol evidence is admissible to show that fact.

*Appeal from District Court, Sheridan County; C. E. Comer, Judge.*

Action by the First National Bank of Raymond against Robert Robke and others.  Judgment for plaintiff and defendants appeal.  Affirmed.

*Mr. Paul Babcock,* for Appellant, submitted a brief and argued the cause orally.

Citing: 19 R. C. L. 287, and 27 Cyc. 1178.

*Mr. Alfred T. Vollum* and *Mr. S. E. Paul,* for Respondent, submitted a brief: *Mr. Vollum* argued the cause orally.

Citing: *Straeffer* v. *Rodman,* 146 Ky. 1, Ann. Cas. 1913C, 549, 561, 141 S. W. 742; *DuBois* v. *First Nat. Bank,* 3 Colo. 400, 96 Pac. 169, 170; *Scofield Implement Co.* v. *Minot Farmers Grain Assn.,* 31 N. D. 605, 154 N. W. 527, *Westheimer* v. *Goodkind,* 24 Mont. 90, 60 Pac. 813; *Noyes' Estate* v. *Granite Alaska Co.,* 57 Mont. 511, 189 Pac. 225; *Johnson* v. *Bratton,* 112 Mich. 319, 70 N. W. 1021; *Shirras* v. *Caig,* 7 Cranch (U. S.), 34, 3 L. Ed. 260 [see, also, Rose's U. S. Notes].

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On November 4, 1918, Robert Robke and his wife executed and delivered to the First National Bank of Raymond their promissory note for $2,500 and a real estate mortgage which on its face purports to secure the payment of the amount repre-

---

    4.  Mortgages to secure future advances, see notes in 20 **Am. Dec.** 658; 116 **Am. Dec.** 690.

    Construction of mortgage on realty to secure future advances, see note in **Ann. Cas.** 1913C, 552.

sented by the note. This action to foreclose the mortgage was instituted by filing a complaint in the usual form, which contains only the necessary allegations as to the execution and delivery of the note and mortgage, their ownership by the plaintiff, and nonpayment, with an appropriate prayer for relief.

The separate answer of the defendant Fishbeck contains the allegation that he has become the owner of the mortgaged premises; otherwise it is in effect a general denial.

The defendants Robke by their joint answer admit the execution and delivery of the note and mortgage in question, and deny the other allegations of the complaint. As an affirmative defense, they allege that on November 4, 1918, they were indebted to the plaintiff bank in the sum of $3,200 represented by one note for $1,500, one for $900, and one for $800, all of which amounts were secured by chattel mortgages; that on the day named they executed and delivered the note of $2,500 and the real estate mortgage as additional security for the original indebtedness of $3,200 or so much thereof as might remain unpaid after the chattel security became exhausted, and for no other purpose whatever. They allege that the note for $900 was paid on January 8, 1919, and that the note for $800 was renewed, and the renewal note paid on May 14, 1920. They then allege that during the fall of 1921 the plaintiff converted to its own use personal property belonging to these defendants of the value of $3,000, and this is pleaded as a set-off to the indebtedness represented by the note for $1,500.

In reply, the plaintiff admits that on November 4, 1918, Robke and wife were indebted to the bank in the sum of $3,200 and that payment thereof was secured by chattel mortgages, but alleges that the chattel security did not exceed in value $2,000. It is then alleged, in paragraph 3: "That, as a part of the same transaction whereby plaintiff loaned to said defendants the sum of $3,200, as aforesaid, and as additional security for said loan and for the payment of the indebtedness thereby created, *and not otherwise,* the said defendants duly made, exe-

cuted, and delivered to the plaintiff herein the promissory note and real estate mortgage mentioned and described in plaintiff's complaint.''

In paragraph 9 appears the following: "That said real estate mortgage was to be held by plaintiff as security for the money loaned to said defendants at that time, as well as any other and further sums that might be loaned to said defendants from time to time by said plaintiff''—but there is not any allegation that other or further sums were ever loaned or advanced to Robke or to his wife.

Upon the issues thus made, the cause was brought to trial to the court without a jury. Findings of fact and conclusions favorable to the plaintiff were made, upon which a judgment of foreclosure was entered, and the answering defendants appealed.

The court found that of the original indebtedness of $3,200 only $420 remains unsatisfied; but that the plaintiff had made advances to Robke and wife from time to time since November 4, 1918; and that the total balance of their indebtedness is $4,006.73. The decree directs that the mortgaged premises be sold and the proceeds of the sale be applied toward the payment of that amount, with costs, attorney's fees and expenses.

It is insisted that the court erred in holding that the real [1]  estate mortgage secures any advances made to Robke or to his wife after November 4, 1918, and we agree with counsel for defendants to this extent: That if the trial had been confined to the issues made by the pleadings, the lower court would have been compelled to exclude any evidence of advances made after November 4, 1918, and to conclude that the real estate mortgage secures only the balance due upon the original indebtedness of $3,200. But defendants could depart from the issues presented by the pleadings and make a case for plaintiff that would justify the findings and conclusions of the trial court, if they chose to do so; or they could sit by without objecting and permit the plaintiff to make such a case, and in either

event the pleadings would be treated as amended to meet the proof. (*State ex rel. Dansie* v. *Nolan,* 58 Mont. 167, 191 Pac. 150; *Archer* v. *Chicago M. & St. P. Ry Co.,* 41 Mont. 56, 137 Am. St. Rep. 692, 108 Pac. 571; *O'Brien* v. *Corra-Rock Island Min. Co.,* 40 Mont. 212, 105 Pac. 724.)

It is evident from the record that the defendants made a case [2]  for plaintiff, or at least contributed to that end, whether they did so wittingly or unwittingly.  On direct examination W. M. Rader, cashier of the plaintiff bank, identified the note for $2,500 and the real estate mortgage; testified that they were in the possession of and owned by the bank, and that no part of the debt represented by the note had been paid.  This is the substance of his direct examination; but on cross-examination counsel for defendants elicited from him that—"Plaintiff's Exhibit 1 [note for $2,500] was held by the bank as security to all obligations against Robert Robke, whether at that time or later; that was the agreement  *  *  *  Exhibit K [note for $750 dated September 15, 1920] was not a renewal of any notes given by Robke before that time; but the fact that we had this real estate mortgage was taken into consideration.  I understood the real estate mortgage provided for future advances. The bank took into consideration that the mortgage was to secure future advances."  Upon redirect examination the witness tes tified without objection that "the agreement was that the mortgage was to be a permanent collateral security."

It may be conceded that this evidence, viewed from the cold record, is vague and not very convincing; but we are not in a position to say that it is altogether without probative value. The trial court found that by agreement of the parties the note for $2,500 and the real estate mortgage were to be held by the bank as security for the original indebtedness of $3,200 and "to secure future advances from the plaintiff bank to the defendants Robke and wife."  On cross-examination and on redirect examination, without objection, the witness Rader testified to the several advances made by the bank to the defendants Robke

after November 4, 1918, disclosing that on March 11, 1921, there was a balance due of $4,405.05. This amount the trial court accepted as the basis from which it made its computation and found that the net balance due at the time of the trial was $4,006.73, after allowing defendants' set-off.

Robert Robke denied that there ever was any agreement that the real estate mortgage should secure future advances; but this presents merely a conflict in the evidence. The trial court heard the witnesses testify, observed their demeanor on the stand and was in a more advantageous position from which to judge of their credibility and of the weight to be given to their testimony than are the members of this court. Furthermore, the court below, as a trier of facts, was authorized to draw any fair inference from the facts stated by the witness Rader (secs. 10601, 10603, Rev. Codes); whereas, this court is placed at a disadvantage in not having the testimony presented to it in the same form as it was presented to the trial court.

Subdivision 3, Rule VII, of the rules of this court, requires [3] that in an action of this character the testimony shall be presented by questions and answers, and the reason for the rule was stated tersely in *Koopman* v. *Mansolf*, 51 Mont. 48, 149 Pac. 491. The rule was violated in this instance, and because of the violation we are obliged to place greater reliance upon the trial court's findings than would be necessary otherwise. (*Officer* v. *Swindlehurst*, 41 Mont. 126, 108 Pac. 583.) Under these circumstances, we cannot say that the evidence preponderates against the findings, and therefore they will not be disturbed. (*Hartnett* v. *Sterling*, 67 Mont. 46, 214 Pac. 330; *Allen* v. *Petrick*, 69 Mont. 373, 222 Pac. 451.)

Defendants contend further that, since the real estate mortgage [4] gage does not purport to secure future advances, it cannot be made to do so by agreement of the parties; but the authorities are practically all to the contrary.

In 19 R. C. L. 286, section 59, it is said: "It is now well settled that a mortgage to secure future advances, though it

does not disclose such purpose on its face, is valid between the parties or as against any subsequent encumbrancer not prejudiced thereby. * * * Of course, the omission to state the object subjects the mortgage to suspicion, and the holder will be put to strict proof of the payment of the consideration. But the rule obtains in this instance, as in the case of descriptions of other obligations, that if the mortgage gives such information that by inspection of the record, and by the exercise of common prudence and ordinary diligence, the extent of the encumbrance may be ascertained, although the instrument may not truthfully state its object on its face, if the transaction is otherwise fair, there is nothing inequitable in enforcing it.''

The same rule is announced in 27 Cyc. 1069 as follows; ''A mortgage may be made as well to secure future advances or loans of money to be made by the mortgagee to the mortgagor as for a present debt or liability; and if executed in good faith it will be a valid security. * * * And the validity of the mortgage is not necessarily impaired by the fact that it does not show upon its face the real character of the transaction, although it recites an existing debt as its consideration, it may be shown that it was intended to cover future advances, and the mortgagee can recover the amount actually advanced up to the time of enforcing the security. The question of good faith is always open to inquiry, but the mere fact that the mortgage was given to secure future advances, while it recites a present debt, or that it was given for a larger amount than was loaned at the time, and with a view of covering future loans, is not conclusive of fraud.''

In the note to *Straeffer* v. *Rodman,* Ann. Cas. 1913C, 552, the following general rules are stated and the numerous decided cases sustaining them are cited:

(a) ''In the absence of any statutory regulation, there is no question as to the validity of mortgages of realty to secure future advances.''

(b) "A mortgage to secure future advances is valid between the parties or as against any subsequent encumbrancer not prejudiced thereby although it does not show on its face that it is made to secure future advances."

(c) "It is not required that an agreement that a mortgage shall be security for future advances must be in writing. Parol evidence is admissible to show that a mortgage absolute on its face was in fact intended to secure future advances."

These rules have heretofore received the sanction of this court. In *Noyes' Estate* v. *Granite-Alaska Co.*, 57 Mont. 511, 189 Pac 225, we quoted approvingly from *Johnson* v. *Bratton*, 112 Mich. 319, 70 N. W. 1021, the following: "Though the mortgage, on its face, is for the payment of a specific sum of money, parol evidence is admissible to show that it was really intended to secure future advances made from time to time." And from *Shirras* v. *Caig*, 7 Cranch (U. S.), 34, 3 L. Ed. 260 [see, also, Rose's U. S. Note], as follows: "It is true that the real transaction does not appear on the face of the mortgage. The deed purports to secure a debt of 30,000 pounds sterling due to all the mortgagees. It was really intended to secure different sums, due at the time from particular mortgagees, advances afterwards to be made, and liabilities to be incurred to an uncertain amount. It is not to be denied, that a deed, which misrepresents the transaction it recites, and the consideration on which it is executed, is liable to suspicion. It must sustain a rigorous examination. It is, certainly, always advisable fairly and plainly to state the truth. But if, upon investigation, the real transaction shall appear to be fair, though somewhat variant from that which is described, it would seem to be unjust and unprecedented to deprive the person claiming under the deed, of his real equitable rights unless it be in favor of a person who has been, in fact, injured and deceived by the misrepresentation."

Defendant Fishbeck did not testify upon the trial of this case, and it cannot be determined that he will be prejudiced by the judgment. So far as we know, he may have had actual

knowledge that the mortgage was intended to secure future advances at the time he purchased the premises.

. The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY, ASSOCIATE JUSTICES STARK and MATTHEWS, and HONORABLE C. W. POMEROY, District Judge, sitting in place of MR. JUSTICE GALEN, absent on account of illness, concur.